

Comptroller of the Currency
Administrator of National Banks

Washington, DC 20219

December 5, 2006

Board of Directors
Commerce Bank, N.A.
1701 Route 70 East
Cherry Hill, New Jersey 08034

Re: Commerce Bank, N.A.

Dear Members of the Board of Directors:

Please be advised that the Office of the Comptroller of the Currency ("OCC"), in conjunction with the Board of Governors of the Federal Reserve System ("Board"), is currently conducting an investigation into the affairs of Commerce Bank, N.A. ("Bank"). The scope of our investigation includes, but is not limited to: (1) transactions related to Bank officers and directors and Commerce Bancorp officers and directors, and their relatives, in-laws and business associates, and (2) transactions related to Bank premises.

The OCC hereby directs the Board of Directors to ensure that the Bank suspends the destruction of documents under its document retention program with respect to the matters described above. The Board of Directors should ensure that the Bank secures and preserves all documents relating to these matters, specifically including all electronic communications and records, in the Bank's possession, control or custody, or in the custody, possession or control of any officers, directors, employees, agents, accountants, attorneys, and other persons or entities acting under the control or direction or on behalf of the Bank. The Board of Directors also should ensure that all relevant Bank officers, directors, employees, agents, accountants, attorneys, and other persons or entities acting under the control or direction or on behalf of the Bank, provide all requested information and documents within the specified timeframes.

Attached to this letter is an initial document request for records relating to this inquiry. The request calls for a first production of documents by December 15, 2006, and a subsequent production by December 22, 2006. It is the OCC's preference that documents be submitted in digital form, in either PDF or TIF format. This request is substantively identical to a document request of today's date made by the staff of the Board. Accordingly, submissions to the OCC and to the staff of the Board should be made simultaneously.

All questions or other communications relating to this investigation should be directed to me at the address above.

Sincerely,

Kevin L. Lee
Senior Counsel
(202) 874-4683

Cc:   Chairman, Audit Committee
      Chairman, Nominating and Governance Committee

REQUEST LETTER

No later than December 15, 2006, you are required to produce the following documents.

(1) Produce all documents related to the January 15, 2002 Commerce Bancorp, Inc. ("Bancorp") Board of Directors meeting.

(2) With respect to the Agency Agreement between Interarch and Bancorp dated January 15, 2002, produce:
    (a) all documents related to the negotiation or approval of the Agency Agreement;
    (b) all documents related to any consideration paid or exchanged by the parties;
    (c) all documents related to any indemnification requested or provided pursuant to the Agency Agreement; and
    (d) all documents related to any evaluation or review of the Agency Agreement or any indemnification requested or provided pursuant to the Agency Agreement.

(3) With respect to the Di Maria II Litigation and the Di Maria II Judgment, produce all documents related to any transfer of funds for the benefit of the Defendants, including, but not limited to:
    (a) all documents related to any transfer of funds (i) pursuant to any law, rule, regulation, order or agreement, as a condition for maintaining appeals; (ii) to partially or wholly satisfy the Di Maria II Judgment; or (iii) for the payment of legal fees or costs;
    (b) all documents related to any communications by, to or within any insurance or bonding company or other surety; and
    (c) all documents related to any evaluation or review of any transfer of funds.

(4) With respect to the following statement contained in SEC Schedule 14A for Commerce Bancorp, Inc., dated April 19, 2002:

*During 2001, Bancorp leased land to a limited partnership partially comprised of the directors of Bancorp including Messrs. Bershad, Hill and Lewis and a corporation owned by Mr. Hill. In accordance with the provisions of the land lease, the limited partnership constructed and owned an office building located on the land. Commerce PA leased the building as a branch facility. During the first quarter of 2002, Bancorp purchased all of the partnership interests of the limited partnership.*

Produce the following:

    (a) Transactional documents:
        (i) with respect to the acquisition of the land by Bancorp (the "initial land acquisition"):
            (A) the purchase contract, option agreement, or other documentation granting rights to Bancorp to acquire the property; and

1

    (B) documents showing the "closing" on the acquisition of the land, including any closing memorandum, deed transfer records, and settlement sheet;

 (ii) with respect to the lease of the land to the limited partnership referred to above (the "land lease transaction"):
    (A) the lease document;
    (B) any other contractual agreements between the limited partnership and Bancorp or its affiliates;
    (C) the limited partnership agreement governing the limited partnership to which the land was leased; and
    (D) documents reflecting the ownership and control of the limited partnership;

 (iii) with respect to the construction of the building on the land that the limited partnership leased from Bancorp (the "building construction"):
    (A) any agreements entered into by the limited partnership with respect to the building construction; and
    (B) documents sufficient to show the financing arrangements for the building construction, including any loan documents;

 (iv) with respect to the lease of the building housing a branch of Commerce PA (the "branch lease"):
    (A) the lease agreement and any other agreements between the limited partnership and Commerce PA or its affiliates;

 (v) with respect to Bancorp's acquisition of the partnership interests of the limited partnership (the "limited partnership acquisition"):
    (A) any agreements between Bancorp (or affiliate of Bancorp) and partners of the limited partnership with respect to the partnership interests, including any option agreements; and
    (B) documents showing the transfer of funds to the partners with respect to Bancorp's acquisition of the partnership interests.

No later than December 22, 2006, you are required to produce the following documents.

 (b) **Other Related Documents**
  (i) with respect to the initial land acquisition, all documents, including, but not limited to:
    (A) all documents related to locating and selecting the land;
    (B) all documents related to any appraisal or other valuation of the land;

2

(C) all documents related to negotiation or approval of the acquisition, and all documents related to any consideration paid or exchanged;
(D) all documents related to any zoning, planning or other governmental approvals sought or obtained;
(E) all documents relating to the business justification for the initial land acquisition;
(F) all documents related to any transfer of funds for the payment of fees or reimbursement of costs;
(G) all documents relating to any internal approvals at Bancorp or at the Bank for the acquisition, including any relevant minutes of the Board(s), or of Board or management committees; and
(H) documents sufficient to show the accounting treatment for the transaction;

(ii) with respect to the land lease, all documents, including, but not limited to:
(A) all documents related to any plan, proposal, contract, agreement or understanding pursuant to which the limited partnership was offered the land lease;
(B) all documents related to any solicitation of interest, bids, offers or proposals from other persons to lease the land;
(C) all documents related to any solicitation of interest, bids, offers or proposals from other persons to construct the office building on the land;
(D) all documents relating to the business justification for the land lease acquisition;
(F) all documents relating to any internal approvals at Bancorp or at the Bank for the land lease, including any relevant minutes of the Board(s), or of Board or management committees;
(E) documents sufficient to show the accounting treatment for the land lease; and
(G) documents reflecting any payments made pursuant to the land lease;

(iii) with respect to the building construction, all documents, including, but not limited to:
(A) all documents related to any zoning, planning or other governmental approvals sought or obtained;
(B) all documents related to any transfer of funds for the payment of construction costs;
(C) all documents related to any transfer of funds for the payment of other fees or reimbursement of costs;

3

CCCF-0118

        (D)    all documents relating to the business justification for the building construction;

        (F)    all documents relating to any internal approvals at Bancorp or at the Bank for the building construction, including any relevant minutes of the Board(s), or of Board or management committees; and

        (E)    documents sufficient to show the accounting treatment for the building construction;

(iv)    with respect to the branch lease, all documents, including, but not limited to:

        (A)    all documents related to any appraisal or other valuation of the branch lease;

        (B)    all documents related to negotiation or approval of the branch lease, and all documents related to the consideration paid or exchanged;

        (C)    all documents related to any transfer of funds for the payment of fees or reimbursement of costs;

        (D)    all documents relating to the business justification for the branch lease;

        (E)    all documents reflecting payments made pursuant to the lease agreement; and

        (F)    all documents relating to any internal approvals at Bancorp or at the Bank for the branch lease, including any relevant minutes of the Board(s), or of Board or management committees;

(v)    with respect to the limited partnership acquisition, all documents, including, but not limited to:

        (A)    all documents related to any appraisal or other valuation of the partnership interests;

        (B)    all documents related to negotiation or approval of the limited partnership acquisition, and all documents related to the consideration paid or exchanged for the partnership interests;

        (C)    all documents relating to the business justificiation for the limited partnership acquisition;

        (E)    all documents reflecting any internal approvals at Bancorp or at the Bank or the limited partnership acquisition, including any relevant minutes of the Board(s), or of Board or management committees; and

        (D)    documents sufficient to show the accounting treatment for the limited partnership acquisition.

**APPENDIX
TO REQUEST LETTER TO**
Commerce Bank, N.A., and Commerce Bancorp, Inc.

A.  DEFINITIONS

1.  The term "Bank" means Commerce Bank, N.A., and all predecessor banks; any wholly owned subsidiaries, affiliates, partnerships, and joint ventures of Commerce Bank, N.A.; and any officers, directors, employees, agents, accountants, attorneys, and other persons or entities acting under the control or direction or on behalf of Commerce Bank, N.A., in their individual and/or corporate capacity.

2.  The term "Holding Company" means Commerce Bancorp, Inc., and all predecessor entities; any wholly owned subsidiaries, affiliates, partnerships, and joint ventures of Commerce Bancorp, Inc.; and any officers, directors, employees, agents, accountants, attorneys, and other persons or entities acting under the control or direction or on behalf of Commerce Bancorp, Inc., in their individual and/or corporate capacity.

3.  The terms "you" and "your" mean the Bank and the Holding Company.

4.  The terms "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive.

5.  The terms "relates," "relating to," or "related to" shall mean about, pertaining to, concerning, referring to, relating to, describing, reflecting, referencing, constituting and/or evidencing a stated subject matter.

6.  The terms "document" and "documents" shall be used in their broadest sense and shall mean and include all written, printed, typed, recorded, or graphic matter of every kind and description, both originals and copies, and all attachments and appendices thereto. Without limiting the foregoing, the terms "document" and "documents" shall include all agreements, contracts, communications, e-mails, text messages, correspondence, letters, telegrams, telexes, facsimiles, messages, memoranda, records, reports, books, summaries, or other records of telephone conversations of interviews, summaries, or other records of meetings and conferences, summaries or other records of negotiations, other summaries, diaries, diary entries, calendars, appointment books, time records, instructions, work assignments, visitor records, forecasts, statistical data, statistical statements, financial statements, work sheets, work papers, drafts, graphs, maps, charts, tables, accounts, analytical records, consultants' reports, notices, marginal notations, notebooks, telephone bills or records, bills, statements, records of obligation and expenditure, invoices, lists, journals, advertising, recommendations, files, printouts, compilations, tabulations, purchase orders, receipts, sell orders, confirmations, checks, canceled checks, letters of credit, envelopes or folders or similar containers, voucher analyses, studies, surveys, transcripts of hearings, transcripts of speeches, tape or disc recordings, sound recordings, video recordings, film, tapes, photographs, punch cards, programs, data compilations from which information can be obtained (including matter

CCCF-0120

used in data processing), and other printed, written, handwritten, typewritten, recorded, stenographic, computer-generated, computer-stored, electronically stored matter, however and by whomever produced, prepared, reproduced, disseminated, or made.

7.  The terms "document" or "documents" shall further include all copies of documents by whatever means made, except that where a document is identified or produced, identical copies thereof which do not contain any markings, additions, or deletions different from the original need not be separately produced. "Document" and "documents" means and includes all matter within the foregoing description that is in your possession, control or custody, or in the possession, control, or custody of your officers, directors, employees, agents, accountants, attorneys, and other persons or entities acting under your control or direction or on your behalf. Without limiting the term "control," a document is deemed to be within your control if you have ownership, possession, or custody of the document, or the right to secure the document or copy thereof from any person or public or private entity having physical possession thereof.

8.  The term "Board" means the board of directors of the Bank and all committees of the Bank board of directors, and/or the board of directors of the Holding Company and all committees of the Holding Company board of directors.

9.  The terms "plan," "proposal," "contract," "agreement," and "understanding," shall be construed in their broadest sense so as to be inclusive rather than exclusive. These terms shall be construed liberally rather than technically. These terms shall include, but not be limited to, any plan, proposal, contract, agreement, or understanding that is oral, written, express, implied, tacit, formal, informal, bilateral, unilateral, conditional, an agreement to agree, illegal, void, illusory, gratuitous, or in which one or more parties do not provide consideration. These terms shall include, but not be limited to, any plan, proposal, contract, agreement, or understanding that might be unenforceable, voidable, or subject to a defense, regardless of the reason for which the plan, proposal, contract, agreement, or understanding might be unenforceable, voidable, or subject to a defense. These terms shall include, but not be limited to, any plan, proposal, contract, agreement, or understanding: that was not intended to be, or in fact is not, legally binding; that was not intended to create, or in fact did not create, any legal obligations; or that was not intended to affect, or in fact did not affect, the parties' legal relations.

10. The phrase "DiMaria II Litigation" means all matters related to the dispute that is described, in part, in *DiMaria Construction, Inc. v. InterArch, Shirley Hill, and Raymond Klumb*, 351 N.J. Super. 558, 799 A. 2d 555, 2001 N.J. Super. LEXIS 505 (N.J. Super. 2001).

11. The phrase "DiMaria II Judgment" means the money owed to DiMaria Construction as a result of the DiMaria II Litigation.

12. The term "InterArch" means InterArch, Inc., all predecessor entities of InterArch, Inc., and any other names by which InterArch, Inc., is known.

6

B.  **INSTRUCTIONS**

1. Each category and sub-category of documents described in the request letter specifically includes, but is not limited to:

    (a) all documents provided to the Board, related to any presentation to the Board, or related to any deliberations or decisions by the Board; and
    (b) all documents related to any other communications:
        (i) by, to, within, or received by, the Bank or the Holding Company;
        (ii) within the possession, custody, or control of the Bank or the Holding Company; or
        (iii) within the possession, custody, or control of your officers, directors, employees, agents, accountants, attorneys, and other persons or entities acting under your control or direction or on your behalf.

2. All documents called for by this request letter are to be produced in un-redacted form. If you make redactions based upon a claim of privilege, such redactions must be clearly marked.

3. If any of the documents requested herein are withheld under a claim of privilege, identify each such document and state the date of the document, identify its author and addressee, each person to whom copies of the document were furnished or to whom the contents thereof were communicated, a summary of the subject matter of the document, its present location and custodian, the basis upon which the asserted privilege is claimed, and the paragraph number, and sub-paragraph number if applicable, of the request letter to which the document is responsive.

4. If any of the documents requested herein have been destroyed, furnish a list identifying each such document, its author and addressee, each person to whom copies of the document were furnished or to whom the contents thereof were communicated, a summary of the substance of the document, the date upon which it was destroyed and the reasons it was destroyed.

5. If any of the documents requested herein is known by you to exist, but is not within your care, custody, control or possession, identify each such document, the whereabouts of such document, the person who is in current possession of such document, and describe what action, if any, you have taken to acquire such document.

6. Documents, including any documents produced in electronic or digital format, shall be indexed to correspond to the paragraph number, and sub-paragraph number if applicable, of the request letter to which they relate. Please create and furnish a master index of produced documents as soon as is practicable after production of the documents.

7. Deliver all documents to:

    Kevin L. Lee
    Senior Counsel
    250 E Street, S.W.
    Washington, D.C. 20219